UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

NOËL GROSSO, a/k/a NOËLLE GROSSO,                    :

                                 Plaintiff,    :        05 Civ. 5080 (RJS) (JCF)

                                        :

              -against-    :        ECF Case

                                          :

THE CITY OF NEW YORK, MICHAEL    :    **THIRD AMENDED**
BLOOMBERG, Mayor of the City of New York,    :    **COMPLAINT AND**
RAYMOND KELLY, Commissioner of the New    :    **JURY DEMAND**
York City Police Department, JOSEPH ESPOSITO,    :
Chief of Department, New York City Police    :
Department, STEPHEN HAMMERMAN, Deputy    :
Commissioner for Legal Matters, New York City    :
Police Department, THOMAS DOEPFNER,    :
Assistant Deputy Commissioner for Legal Matters,    :
New York City Police Department, KERRY R.    :
SWEET, Deputy Inspector for Legal Matters,    :
DAVID COHEN, Deputy Commissioner for    :
Intelligence, JOHN J.COLGAN, Deputy Chief and    :
Commanding Officer, Pier 57, JACK MCMANUS,    :
RUBY MARIN-JORDAN, JAMES ESSIG,    :
THOMAS GALATI, GERALD DIECKMANN,    :
DERRICK BAITY, MARK E. KEEGAN, JESSICA    :
KNATZ, LINDA HOLMES, SULMAN ZAHEER,    :
JULIO CALLE, FRANCISCO ALCANTARA,    :
NICHOLAS GRAVINO, PRINCE WILLIAMS,    :
STEVEN RICCA, GREGORY BELL, FRANK    :
MAROUSEK, JOHN WEISER, CHARLES    :
CHAPLAR, CYNTHIA ROSARIO, ABDIEL    :
ANDERSON, EUNPA CHUN, TIMOTHY    :
ROGERS, DARREN ROCK, JORGE    :
ENCARNACION, DIANE HAYES, and    :
JOHN and JANE DOES # 1, 2, 10, 14, 19, 20,    :
25, 26, 27, and 28, individually and in their official    :
capacities (the names John and Jane Doe being    :
ficticious, as the true names of these defendants are    :
presently unknown),    :

                                    :

                            Defendants.    :

-------------------------------------------------------------x

Plaintiff Noël Grosso, by her attorneys Allegaert Berger & Vogel LLP, as and for her Third Amended Complaint against Defendants The City of New York ("City"), Michael Bloomberg, Raymond Kelly, Joseph Esposito, Stephen Hammerman, Thomas Doepfner, Kerry R. Sweet, David Cohen, John J. Colgan, Jack McManus, Ruby Marin-Jordan, James Essig, Thomas Galati, Gerald Dieckmann, Derrick Baity, Mark E. Keegan, Jessica Knatz, Linda Holmes, Sulman Zaheer, Julio Calle, Francisco Alcantara, Nicholas Gravino, Prince Williams, Steven Ricca, Gregory Bell, Frank Marousek, John Weiser, Charles Chaplar, Cynthia Rosario, Abdiel Anderson, Eunpa Chun, Timothy Rogers, Darren Rock, Jorge Encarnacion, Diane Hayes and John and Jane Does # 1 - # 29 (collectively, "Defendants"), upon knowledge as to her own acts and status and upon information and belief as to all other matters, alleges as follows:

## PRELIMINARY STATEMENT

1.  Plaintiff brings this claim as a result of the City's policy and practice of using mass-arrest tactics against Plaintiff during the Republican National Convention held in New York City on August 26, 2004 through September 2, 2004. Plaintiff alleges the following: violation of her civil rights pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Article I, Sections 8 and 12 of the New York State Constitution and New York Criminal Procedure Law § 140.20; false arrest; false imprisonment; malicious prosecution; abuse of process; negligence; personal injuries; intentional and negligent infliction of emotional distress; replevin; and conversion.

2.  On August 31, 2004, Plaintiff was one of apparently many hundreds of people swept up in the police arrests that took place in connection with political protests throughout the City of New York. Plaintiff, however, did not participate in these protests. Rather, Plaintiff, a

2

photographer, was on her way home from a camera store near Union Square when she stopped to photograph protesters and others in the area. At approximately 7:00 p.m., New York City police officers detained her, restrained her with plastic handcuffs (flexcuffs), and held her in Union Square until approximately 10:00 p.m. when she was put onto a bus and transported to Pier 57. The officer who arrested Plaintiff stated to Plaintiff, in words or substance, that he did not want to arrest Plaintiff and that she had not done anything wrong.

3.    At Pier 57, the floor was soaked with dirt, oil, and anti-freeze, among other things. Plaintiff therefore stood for approximately sixteen and a half hours. During this time, Plaintiff's camera, worth approximately $6,000, and film were confiscated by the police. Plaintiff was not advised of how long she would be held or exactly what she was being charged with. Plaintiff was released on September 2, 2004 at approximately 8:00 p.m., at which time she was issued a Desk Appearance Ticket.

4.    On or about November 8, 2004, at Plaintiff's second court appearance in connection with the criminal charges brought against her, the Assistant District Attorney informed the judge that the City had no evidence that Plaintiff had done anything wrong. Accordingly, the Criminal Court of the City of New York dismissed all charges against Plaintiff. At Plaintiff's first court appearance, the Assistant District Attorney offered Plaintiff an adjournment in contemplation of dismissal ("ACD"), which Plaintiff rejected.

5.    Several months later, Plaintiff still experiences severe pain and numbness in her wrists and fingers as a result of the officers' use of tight flexcuffs. After several months of diligent and repeated efforts to recover her personal property, Ms. Grosso finally received her cameras (which she needs to earn her livelihood) -- damaged -- and all but one roll of film.

6.   As the direct and proximate result of the New York City Police Department's policy and practice of, among other things, using mass-arrest tactics against Plaintiff during the Republican National Convention, Plaintiff's civil rights have been violated, Plaintiff has sustained injury to her wrists and hands, continues to suffer from emotional distress, and has not recovered one roll of her film.

## JURISDICTION AND VENUE

7.   This court has jurisdiction over Plaintiff's claims for the violation of Plaintiff's constitutional and civil rights pursuant to 28 U.S.C. §§ 1331 and 1343(a).

8.   This court has jurisdiction over Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

9.   This court has jurisdiction over Plaintiff's claims for the violation of Plaintiff's state constitutional rights and all other claims arising under state law pursuant to 28 U.S.C. § 1367(a).

10.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that Plaintiff's claims arose in the Southern District of New York.

## PARTIES

11.   Plaintiff NOËL GROSSO, also known as NOËLLE GROSSO, is a resident of New York, New York.

12.   Defendant CITY OF NEW YORK is a municipal corporation within the State of New York.

4

13.  Defendant MICHAEL BLOOMBERG is the Mayor of the City of New York and is sued both in his individual and official capacities.

14.  Defendant RAYMOND KELLY is the Police Commissioner for the City of New York and is sued both in his individual and official capacities.

15.  Defendant JOSEPH ESPOSITO is the Chief of Department of the New York Police Department and is sued both in his individual and official capacities.

16.  Defendant STEPHEN HAMMERMAN is the Deputy Commissioner for Legal Matters of the New York Police Department and is sued both in his individual and official capacities.

17.  Defendant THOMAS DOEPFNER is the Assistant Deputy Commissioner for Legal Matters of the New York Police Department and is sued both in his individual and official capacities.

18.  Defendant KERRY R. SWEET is the Deputy Inspector for Legal Matters of the New York Police Department and is sued both in his individual and official capacities.

19.  Defendant DAVID COHEN is the Deputy Commissioner for Intelligence for the New York Police Department and is sued both in his individual and official capacities.

20.  Defendant JOHN J. COLGAN is a Deputy Chief of the New York Police Department, responsible for overseeing the New York Police Department's operations at Pier 57, and is sued both in his individual and official capacities.

21.  Defendant JACK MCMANUS is an Assistant Chief of the New York Police Department and is sued both in his individual and official capacities.

22. Defendant RUBY MARIN-JORDAN is the Legal Bureau Supervisor of the New York Police Department and is sued both in her individual and official capacities.

23. Defendant JAMES ESSIG is an Inspector employed by the New York Police Department and is sued both in his individual and official capacities.

24. Defendant THOMAS P. GALATI is an Inspector employed by the New York Police Department and is sued both in his individual and official capacities.

25. Defendant GERALD DIECKMANN is an Inspector employed by the New York Police Department and is sued both in his individual and official capacities.

26. Defendant DERRICK BAITY is a Detective employed by the New York Police Department and is sued both in his individual and official capacities.

27. Defendant MARK E. KEEGAN is a Lieutenant of the New York Police Department, and is sued both in his individual and official capacities.

28. Defendant JOHN DOE # 1 is an individual who, on the evening and night of August 31, 2004, was employed by the New York Police Department, wore a shield bearing number "417", was on or in the vicinity of East 16th Street between Park Avenue South and Irving Place, and is sued both in his individual and official capacities.

29. Defendant JOHN DOE # 2 is an individual who, on the evening and night of August 31, 2004, was employed by the New York Police Department, wore a shield bearing number "3836", was on or in the vicinity of East 16th Street between Park Avenue South and Irving Place, and is sued both in his individual and official capacities.

30. Defendant JESSICA KNATZ is a police officer of the New York Police Department, and is sued both in her individual and official capacities.

31.  Defendant LINDA HOLMES is a police officer of the New York Police Department, and is sued both in her individual and official capacities.

32.  Defendant SULMAN ZAHEER is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

33.  Defendant JULIO CALLE is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

34.  Defendant FRANCISCO ALCANTARA is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

35.  Defendant NICHOLAS GRAVINO is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

36.  Defendant PRINCE WILLIAMS is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

37.  Defendant JOHN DOE # 10 is an individual who, on the evening and night of August 31, 2004, was employed by the New York Police Department, wore a shield bearing number "29997", was on or in the vicinity of East 16th Street between Park Avenue South and Irving Place, and is sued both in his individual and official capacities.

38.  Defendant STEVEN RICCA is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

39.  Defendant GREGORY BELL is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

40.  Defendant FRANK MAROUSEK is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

7

41.  Defendant JOHN DOE # 14 is an individual who, on the evening and night of August 31, 2004, was employed by the New York Police Department, wore a shield bearing number "5975", was on or in the vicinity of East 16th Street between Park Avenue South and Irving Place, and is sued both in his individual and official capacities.

42.  Defendant JOHN WEISER is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

43.  Defendant CHARLES CHAPLAR is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

44.  Defendant CYNTHIA ROSARIO is a police officer of the New York Police Department, and is sued both in her individual and official capacities.

45.  Defendant ABDIEL ANDERSON is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

46.  Defendant JOHN DOE # 19 is an individual who, on the evening and night of August 31, 2004, was employed by the New York Police Department, wore a shield bearing number "25975", was on or in the vicinity of East 16th Street between Park Avenue South and Irving Place, and is sued both in his individual and official capacities.

47.  Defendant JOHN DOE # 20 is an individual who, on the evening and night of August 31, 2004, was employed by the New York Police Department, wore a shield bearing number "2659", was on or in the vicinity of East 16th Street between Park Avenue South and Irving Place, and is sued both in his individual and official capacities.

48.  Defendant EUNPA CHUN is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

49.   Defendant TIMOTHY ROGERS is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

50.   Defendant DARREN ROCK is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

51.   Defendant JORGE ENCARNACION is a police officer of the New York Police Department, and is sued both in his individual and official capacities.

52.   Defendant JOHN DOE # 25 is an individual who, on the evening and night of August 31, 2004, was employed by the New York Police Department, wore a shield bearing number "2949", was on or in the vicinity of East 16th Street between Park Avenue South and Irving Place, and is sued both in his individual and official capacities.

53.   Defendant JOHN DOE # 26 is an individual who, on the evening and night of August 31, 2004, was employed by the New York Police Department, wore a pin or clothing bearing the last name of Gomez, was on or in the vicinity of East 16th Street between Park Avenue South and Irving Place, and is sued both in his individual and official capacities.

54.   Defendant JOHN DOE # 27 is an individual who, on the evening and night of August 31, 2004, was employed by the New York Police Department, wore a pin or clothing bearing the last name of Jackson, was on or in the vicinity of East 16th Street between Park Avenue South and Irving Place, and is sued both in his individual and official capacities.

55.   Defendant JOHN DOE # 28 is an individual who, on the evening and night of August 31, 2004, was employed by the New York Police Department, wore a pin or clothing bearing the last name of Manzi, was on or in the vicinity of East 16th Street between Park Avenue South and Irving Place, and is sued both in his individual and official capacities.

9

56.  Defendant DIANE HAYES is a police officer of the New York Police Department, and is sued both in her individual and official capacities.

## BACKGROUND

57.  The Republican National Convention ("RNC") was held in New York, New York between August 30, 2004 and September 2, 2004.  Defendants were aware in advance of the RNC that numerous demonstrations were planned to take place during the RNC.  Indeed, many groups had applied to defendant City for permits to conduct protests during the RNC throughout the city.

58.  Months prior to the commencement of the RNC, Defendants began to prepare to make mass arrests during the RNC.  As part of this preparation, Defendants developed a plan to ensure that those arrested were processed slowly and not released until the RNC had ended.  To accomplish their scheme, Defendants adopted mass arrest procedures whereby Defendants arrested individuals without probable cause, used nets to corral those individuals, and placed those individuals in an inadequately equipped and hazardously maintained detention facility.

59.  As part of the basis for their plan, Defendants adopted certain recommendations made by Defendant COHEN who initiated and/or oversaw the RNC surveillance program, which included collecting intelligence concerning individuals and groups of individuals who might protest during the RNC.  Defendant COHEN misinformed Defendants of the security threat posed by these individuals and groups of individuals  By so doing, Defendant COHEN withheld relevant and material information and/or created false information that caused, in part, Defendants to adopt the mass arrest procedures they utilized, including

10

without limitation, imposing a policy of not issuing summons to individuals who would have been eligible for them in non-mass-arrest settings and fingerprinting all individuals arrested.

60.  Defendants' plan was intended to punish and retaliate against individuals who were protesting, as well as individuals who were merely witnessing the protests or merely walking by at the time the arrests were made.  Defendants acted with the intention of discouraging political protests, freedom of expression, and freedom of speech.

61.  Defendants' plan included detaining those arrested in a facility located at Pier 57 in New York, New York.  This facility was unfit for human occupancy and contained numerous signs so stating.  On or about July 28, 2004, Defendants entered into an agreement with the owner of Pier 57 to lease these premises in order to detain those arrested there, knowing that Pier 57 was not and would not be fit for human occupancy during the RNC and that those detained there would be subject to health hazards.

62.  Defendants instituted and administered a policy of fingerprinting every individual arrested during these mass arrests, but not in a timely manner.  In fact, Defendants detained those arrested for more than 24 hours -- approximately 16 of which Plaintiff spent at Pier 57 -- and purposely had no means to fingerprint them while they were being held at Pier 57. Defendants thus intentionally created and utilized a fingerprinting policy which they knew in advance would significantly delay the processing and release of those arrested (including those falsely arrested, among whom Plaintiff was one), and which Defendants also knew would in fact and did result in the detainment of these individuals until either close to or after the completion of the RNC.

63.   While at Pier 57, many individuals who were arrested had their personal property seized.  Throughout their detention, many individuals were also denied access to attorneys.

64.   During the RNC, Defendants defied two court orders issued by the New York State Supreme Court which directed Defendants to permit those arrested access to attorneys and later to bring those arrested to court or release them.  Defendants failed to comply with both orders, for which contempt proceedings are now pending.

65.   Defendants implemented a mass arrest policy whereby Defendants arrested or caused to be arrested individuals indiscriminately, and without probable cause, who were peacefully assembled in the vicinity of demonstrations and were engaged in lawful activity, observing such activity, or merely passing by.

## FACTS

66.   Plaintiff Noëlle Grosso was at all relevant times a resident of New York, New York.  She lived within walking distance of Union Square.  She is a professional photographer.

67.   On August 31, 2004, Ms. Grosso was one of apparently hundreds of people swept up in police arrests that took place in connection with political protests throughout the City of New York.

68.   Ms. Grosso did not participate in any protests in New York City on August 31, 2004, or on any other day.  On August 31, 2004, at approximately 6:00 p.m., Ms. Grosso was walking east towards Union Square, on her way home from a camera store west of Union Square, when she saw protesters peacefully gathered in the area of Union Square.  Because she is a

professional photographer and had her camera equipment with her, Ms. Grosso remained in the vicinity of Union Square to photograph the protesters.

69.    Shortly thereafter, at approximately 7:00 p.m., Ms. Grosso was walking towards her home when she, along with all others standing on that block, was detained by New York City police officers -- without any notice, warning, or announcement by the officers -- on East 16th Street between Park Avenue South and Irving Place.

70.    The officers detained Ms. Grosso and held her and the other detainees in Union Square, never allowing her to leave, until approximately 10:00 p.m., at which time these detainees were restrained with plastic handcuffs (flexcuffs) and put on a bus for approximately an hour, during which time the air conditioning in the bus was off. While on the bus, another detainee removed her own flexcuffs. In retaliation, the officers tightened the flexcuffs on all detainees, including Ms. Grosso. Ms. Grosso voiced serious complaints that the flexcuffs were too tight around her wrists and were causing her enormous pain, but none of the officers assisted Ms. Grosso.

71.    The bus transported Ms. Grosso and the other detainees from the Union Square vicinity to Pier 57. At approximately midnight, Ms. Grosso arrived at Pier 57, where she waited for approximately one and one half hours in line to have her flexcuffs removed.

72.    Ms. Grosso was then placed in a co-ed cell, where she remained until approximately 4:15 a.m. on September 1, 2004. The floor of the holding cell, like the floors of all of Pier 57, was soaked with dirt, oil, gas, and antifreeze, among other things. Other than the filthy, toxic ground, there was nowhere for those incarcerated to sit, so Ms. Grosso remained standing for the entire period of her confinement at Pier 57 -- approximately sixteen hours.

13

73.  On September 1, 2004, at approximately 4:15 a.m., Defendant BAITY confiscated Ms. Grosso's personal belongings including her camera, worth approximately $6,000, and her film.

74.  At approximately 4:45 a.m., Ms. Grosso was then placed in an all female cell where she remained -- standing -- until approximately 2:45 p.m.  At approximately 7:30 or 8:00 a.m., Ms. Grosso was moved to yet another cage at Pier 57.  By this time, the officers had already transported many of the detainees from Pier 57, so the officers wiped down the cages at Pier 57 in an effort to deceive the public from learning of the hazardous conditions at Pier 57.

75.  At approximately 3:15 p.m., the officers again placed Ms. Grosso in flexcuffs.  Ms. Grosso again complained that the flexcuffs were too tight, but the officers ignored her complaints.  Ms. Grosso was then escorted to a van with other detainees.

76.  The officer driving the van drove erratically, causing Ms. Grosso and the other detainees to be bounced around the back of the van.  Upon the van's arrival at 100 Centre Street, the officers left Ms. Grosso and the other detainees in the back of the van, flexcuffed, with no air conditioning, for approximately one hour.

77.  The officers then drove the van to the back entrance of 100 Centre Street where they removed the flexcuffs from the detainees, including Ms. Grosso.  The officers then placed daisy chains on Ms. Grosso and the other detainees, approximately six detainees to a chain.

78.  Upon her entry to 100 Centre Street through the metal detector, Ms. Grosso was subjected for approximately five minutes to an invasive hand search.

79.    At approximately 5:00 p.m., the officers placed Ms. Grosso into a crowded cell where she remained for approximately four hours.

80.    At approximately 9:00 p.m., the officers moved Ms. Grosso into a larger cell that had benches and access to a payphone.

81.    Ms. Grosso, agitated that she had not yet been provided with an opportunity to make a telephone call, became very upset.  In retaliation, a female officer threatened to send Ms. Grosso to the psychiatric ward if she did not calm down.  At approximately 11:00 p.m., Ms. Grosso was permitted to make her first telephone call.

82.    At approximately 1:00 a.m. on September 2, 2004 -- or more than thirty hours after she was initially arrested -- Ms. Grosso was again placed in a daisy chain and escorted to have her fingerprints and mug shot taken.

83.    Shortly thereafter, Ms. Grosso was escorted to the 12th Floor and placed in a very cold cell with other detainees.

84.    On September 2, 2004, at approximately 1:00 p.m., Ms. Grosso was again daisy chained with other detainees and brought to another floor, where she sat on the floor. While there, a dark skinned male officer in his mid-thirties attempted to antagonize the detainees, including Ms. Grosso, calling them "Bush haters" and "hypocrites" and further exclaimed to Ms. Grosso, "Look at you now!"  This officer, as well as other officers, repeatedly stated that all detainees were being held until President Bush left New York City.  They also stated to Ms. Grosso that her name would be placed on a watch list and she would therefore have trouble traveling.

15

85.   Shortly thereafter, paramedics and firemen interviewed Ms. Grosso and told her that they could not provide her with water or anything else, including Visine, which Ms. Grosso specifically requested to relieve pain in her eyes.

86.   At approximately 4:30 p.m., Ms. Grosso was placed into another cell where she was held until approximately 7:00 p.m.

87.   At approximately 7:00 p.m., Ms. Grosso was escorted to a court room where she was later called to a desk and issued a Desk Appearance Ticket requiring her appearance in court on October 8, 2004.

88.   On September 2, 2004, at approximately 8:00 p.m. -- or more than two days after she was initially arrested -- Ms. Grosso was finally released.

89.   As a result of the tight flexcuffs, Ms. Grosso suffered severe pain in her wrists for approximately four and one half months and had to wear wrist guards.  Ms. Grosso continues to experience numbness and pain in her wrists and fingers.

90.   Within a day of her release, Ms. Grosso developed a cough and serious illness that lasted approximately three weeks after her release.

91.   On or about October 8, 2004, Plaintiff appeared in court pursuant to the Desk Appearance Ticket.  At this time, the Assistant District Attorney offered Plaintiff an adjournment in contemplation of dismissal ("ACD"), which Plaintiff rejected.  The court adjourned the case to November 8, 2004.

92.   On or about November 8, 2004, Plaintiff again appeared in court.  The Assistant District Attorney informed the judge that the City had no evidence that Plaintiff had

16

done anything wrong. Accordingly, the Criminal Court of the City of New York dismissed all charges against Plaintiff.

93. On or about December 8, 2004, after many unsuccessful attempts, Ms. Grosso finally received back her camera and most of her film. The camera had been damaged while in the defendant City's possession. One roll of film remains missing.

94. On or about November 29, 2004, Plaintiff caused to be filed a Notice of Claim pursuant to New York General Municipal Law § 50-e. On March 15, 2005, a hearing was held pursuant to New York General Municipal Law § 50-h.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Violations of the First and Fourteenth Amendments
to the United States Constitution and 42 U.S.C. § 1983)
(Against all Defendants)

95. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

96. Defendants have deprived Plaintiff of the rights, privileges, remedies, and immunities guaranteed to her as a citizen of the United States, in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 through their policies and practices of (i) implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause, as a means to detain Plaintiff, who was walking home or otherwise peaceably assembling; (ii) detaining her for an unnecessary and lengthy period of time, subjecting her to cruel, inhumane and hazardous conditions, depriving her of food and medical assistance, and seizing her property; (iii) unnecessarily fingerprinting Plaintiff; and (iv) making

17

false statements in police documents and documents filed with the criminal court concerning the circumstances of Plaintiff's arrest.

97. As a direct and proximate result of Defendants' unlawful behavior, Plaintiff has suffered, and continues to suffer, injury and damages, including without limitation, physical and mental pain, suffering and mental anguish.

98. No adequate remedy at law exists for the irreparable injury Defendants have caused Plaintiff through their violations of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and of 42 U.S.C. § 1983. Accordingly, Defendants should be enjoined from the policies and practices of implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause; detaining individuals for unnecessary and lengthy periods of time; unnecessarily fingerprinting individuals; and making false statements in police documents and documents filed with the criminal court concerning the circumstances that serve as the basis for an arrest.

SECOND CLAIM FOR RELIEF
(Violations of the Fourth and Fourteenth Amendments
to the United States Constitution and 42 U.S.C. § 1983)
(Against all Defendants)

99. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

100. Defendants have deprived Plaintiff of the rights, privileges, remedies, and immunities guaranteed to her as a citizen of the United States, in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 through their policies and practices of (i) implementing, enforcing, encouraging and ratifying the use of mass

18

arrest tactics, without probable cause, as a means to detain Plaintiff, who was walking home or otherwise peaceably assembling; (ii) detaining her for an unnecessary and lengthy period of time, subjecting her to cruel, inhumane and hazardous conditions, depriving her of food and medical assistance, and seizing her property; (iii) unnecessarily fingerprinting Plaintiff; and (iv) making false statements in police documents and documents filed with the criminal court concerning the circumstances of Plaintiff's arrest.

101.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiff has suffered, and continues to suffer, injury and damages, including without limitation, physical and mental pain, suffering and mental anguish.

102.    No adequate remedy at law exists for the irreparable injury Defendants have caused Plaintiff through their violations of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and of 42 U.S.C. § 1983. Accordingly, Defendants should be enjoined from the policies and practices of implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause; detaining individuals for unnecessary and lengthy periods of time; unnecessarily fingerprinting individuals; and making false statements in police documents and documents filed with the criminal court concerning the circumstances that serve as the basis for an arrest.

THIRD CLAIM FOR RELIEF
(Supervisory Liability for Deprivation of Rights Under
the United States Constitution and 42 U.S.C. §§ 1981 and 1983)
(Against Defendants Bloomberg, Kelly, Hammerman, Doepfner, Sweet, Marin-Jordan,
McManus, Esposito, Essig, Dieckmann, Colgan, Galati, Keegan, and Encarnacion)

103.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

104.    By their conduct in participating in the constitutional violations, and/or

failing to remedy the wrongs committed by employees of the City of New York under their

supervision, an/or in failing to properly train, supervise, and/or discipline employees of the City

of New York under their supervision, and/or creating a policy or custom under which

unconstitutional practices occurred, and/or allowing the continuance of such a policy or custom,

and/or exhibiting deliberate indifference by failing to act on information indicating that

unconstitutional acts were occurring, defendants BLOOMBERG, KELLY, HAMMERMAN,

DOEPFNER, SWEET, MARIN-JORDAN, MCMANUS, ESPOSITO, ESSIG, DIECKMANN,

COLGAN, GALATI, KEEGAN, and ENCARNACION caused damage and injury in violation of

Plaintiff's rights guaranteed under 42 U.S.C. § 1983 and the United States Constitution,

including without limitation the First, Fourth, Fifth and Fourteenth Amendments thereof, by

arresting Plaintiff as part of a mass arrest without probable cause, creating perjured sworn

statements to attempt to justify Plaintiff's arrest, detaining Plaintiff as part of a mass arrest for the

duration of the RNC, and fingerprinting Plaintiff in violation of New York Criminal Procedure

Law § 160.10.

105.    As a result of the foregoing, Plaintiff was deprived of her liberty, suffered

specific and serious bodily injury, pain and suffering, emotional distress and psychological

injury, humiliation, loss of income, costs and expenses, and was otherwise damaged and injured.

106.    No adequate remedy at law exists for the irreparable injury Defendants have

caused Plaintiff through their violations of Plaintiff's rights under the First, Fourth and

Fourteenth Amendments to the United States Constitution and of 42 U.S.C. § 1983.

Accordingly, Defendants should be enjoined from the policies and practices of implementing,

20

enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause;

detaining individuals for unnecessary and lengthy periods of time; unnecessarily fingerprinting

individuals; and making false statements in police documents and documents filed with the

criminal court concerning the circumstances that serve as the basis for an arrest.

**FOURTH CLAIM FOR RELIEF**
(Article I, Section 8 of the New York State Constitution)
(Against all Defendants)

107.  Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth

herein.

108.   Defendants have deprived Plaintiff of the rights, privileges, remedies, and

immunities guaranteed to her as a citizen of the State of New York, in violation of Article I,

Section 8 of the New York State Constitution, through their policies and practices of

(i) implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without

probable cause, as a means to detain Plaintiff,  who was walking home or otherwise peaceably

assembling; (ii) detaining her for an unnecessary and lengthy period of time, subjecting her to

cruel, inhumane and hazardous conditions, depriving her of food and medical assistance, and

seizing her property; (iii) unnecessarily fingerprinting Plaintiff; and (iv) making false statements

in police documents and documents filed with the criminal court concerning the circumstances of

Plaintiff's arrest.

109.  As a direct and proximate result of Defendants' unlawful behavior, Plaintiff

has suffered, and continues to suffer, injury and damages, including without limitation, physical

and mental pain, suffering and mental anguish.

21

110.  No adequate remedy at law exists for the irreparable injury Defendants have caused Plaintiff through their violation of Article I, Section 8 of the New York State Constitution.  Accordingly, Defendants should be enjoined from the policies and practices of implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause; detaining individuals for unnecessary and lengthy periods of time; unnecessarily fingerprinting individuals; and making false statements in police documents and documents filed with the criminal court concerning the circumstances that serve as the basis for an arrest.

FIFTH CLAIM FOR RELIEF
(Article I, Section 9 of the New York State Constitution)
(Against all Defendants)

111.  Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

112.  Defendants have deprived Plaintiff of the rights, privileges, remedies, and immunities guaranteed to her as a citizen of the State of New York, in violation of Article I, Section 9 of the New York State Constitution, through their policies and practices of (i) implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause, as a means to detain Plaintiff,  who was walking home or otherwise peaceably assembling; (ii) detaining her for an unnecessary and lengthy period of time, subjecting her to cruel, inhumane and hazardous conditions, depriving her of food and medical assistance, and seizing her property; (iii) unnecessarily fingerprinting Plaintiff; and (iv) making false statements in police documents and documents filed with the criminal court concerning the circumstances of Plaintiff's arrest.

22

113. As a direct and proximate result of Defendants' unlawful behavior, Plaintiff has suffered, and continues to suffer, injury and damages, including without limitation, physical and mental pain, suffering and mental anguish.

114. No adequate remedy at law exists for the irreparable injury Defendants have caused Plaintiff through their violation of Article I, Section 9 of the New York State Constitution. Accordingly, Defendants should be enjoined from the policies and practices of implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause; detaining individuals for unnecessary and lengthy periods of time; unnecessarily fingerprinting individuals; and making false statements in police documents and documents filed with the criminal court concerning the circumstances that serve as the basis for an arrest.

<u>SIXTH CLAIM FOR RELIEF</u>
(Article I, Section 12 of the New York State Constitution)
(Against all Defendants)

115. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

116. Defendants have deprived Plaintiff of the rights, privileges, remedies, and immunities guaranteed to her as a citizen of the State of New York, in violation of Article I, Section 12 of the New York State Constitution, through their policies and practices of (i) implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause, as a means to detain Plaintiff, who was walking home or otherwise peaceably assembling; (ii) detaining her for an unnecessary and lengthy period of time, subjecting her to cruel, inhumane and hazardous conditions, depriving her of food and medical assistance, and seizing her property; (iii) unnecessarily fingerprinting Plaintiff; and (iv) making false statements

23

in police documents and documents filed with the criminal court concerning the circumstances of Plaintiff's arrest.

117.   As a direct and proximate result of Defendants' unlawful behavior, Plaintiff has suffered, and continues to suffer, injury and damages, including without limitation, physical and mental pain, suffering and mental anguish.

118.   No adequate remedy at law exists for the irreparable injury Defendants have caused Plaintiff through their violation of Article I, Section 12 of the New York State Constitution.  Accordingly, Defendants should be enjoined from the policies and practices of implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause; detaining individuals for unnecessary and lengthy periods of time; unnecessarily fingerprinting individuals; and making false statements in police documents and documents filed with the criminal court concerning the circumstances that serve as the basis for an arrest.

<u>SEVENTH CLAIM FOR RELIEF</u>
(False Arrest)
(Against Defendants City, Bloomberg, Kelly, Esposito and Colgan)

119.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

120.   Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN acted with intent and malice by implementing, enforcing, encouraging and ratifying their policy and practice of using mass arrest tactics, without probable cause, as a means to detain and confine Plaintiff, who was peaceably assembling and was informed by her arresting officer at the time of her arrest that she had not committed any crime, and of detaining and confining her for an

unnecessary and lengthy period of time, subjecting her to cruel, inhumane and hazardous

conditions, and seizing her property.

121. Plaintiff was fully aware and conscious of her confinement and that

Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN were violating her

civil rights and acting without probable cause.

122. At no time did Plaintiff consent to her confinement.

123. The arrest and confinement of Plaintiff, which were admittedly done

without probable or reasonable cause and without the issuance of a warrant, by Defendants

CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN, were in no respect privileged and

were contrary to the laws of the State of New York, including, without limitation, Article 140 of

New York Criminal Procedure Law.

EIGHTH CLAIM FOR RELIEF
(False Imprisonment)
(Against Defendants City, Bloomberg, Kelly, Esposito and Colgan)

124. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth

herein.

125. Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN

acted with intent and malice by implementing, enforcing, encouraging and ratifying their policy

and practice of using mass arrest tactics, without probable cause, as a means to detain and

confine Plaintiff, who was peaceably assembling and was informed by her arresting officer at the

time of her arrest that she had not committed any crime, and of detaining and confining her for an

unnecessary and lengthy period of time, subjecting her to cruel, inhumane and hazardous

conditions, and seizing her property.

126.    Plaintiff was fully aware and conscious of her confinement and that Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN were violating her civil rights and acting without probable cause.

127.    At no time did Plaintiff consent to her confinement.

128.    The arrest and confinement of Plaintiff, which were admittedly done without probable or reasonable cause and without the issuance of a warrant, by Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN, were in no respect privileged and were contrary to the laws of the State of New York, including, without limitation, Article 140 of New York Criminal Procedure.

### NINTH CLAIM FOR RELIEF
(Malicious Prosecution)
(Against Defendants City, Bloomberg, Kelly, Esposito and Colgan)

129.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

130.    Subsequent to arresting Plaintiff, Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN intentionally, wrongfully and maliciously commenced or caused to be commenced, without reasonable or probable cause, a criminal proceeding against Plaintiff, which proceeding was dismissed.

### TENTH CLAIM FOR RELIEF
(Abuse of Process)
(Against Defendants City, Bloomberg, Kelly, Esposito and Colgan)

131.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

26

132. Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN caused Plaintiff to be arrested in an unlawful manner, issued her a desk appearance ticket, and compelled her to defend herself against a frivolous criminal action.

133. Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN did so with a purpose to do harm, without economic or social excuse or justification.

134. By doing so, Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN sought a collateral advantage, outside the legitimate ends of the process, by detaining and confining Plaintiff, who was doing nothing illegal or wrong, in an effort to prevent her from protesting or causing any disturbance during the RNC.

ELEVENTH CLAIM FOR RELIEF
(Intentional Infliction of Emotional Distress)
(Against Defendants City, Bloomberg, Kelly, Esposito and Colgan)

135. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

136. The policy and practice of Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause, as a means to detain Plaintiff, who was peaceably assembling and was informed by her arresting officer at the time of her arrest that she had not committed any crime, and of detaining her for an unnecessary and lengthy period of time, subjecting her to cruel, inhumane and hazardous conditions, depriving her of food and medical assistance, and seizing her property, was intentional, malicious, extreme, and outrageous and done so with the intention of causing, or with disregard of a substantial probability of causing, Plaintiff severe emotional distress.

27

137.   The acts of Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN acts were therefore willful, wanton, intentionally and actually malicious and oppressive, and went beyond all possible bounds of decency, thereby justifying an award of compensatory, exemplary and punitive damages.

TWELFTH CLAIM FOR RELIEF
(Negligent Infliction of Emotional Distress)
(Against Defendants City, Bloomberg, Kelly, Esposito and Colgan)

138.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

139.   Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN owed a duty to Plaintiff not to deprive Plaintiff of the rights afforded to her by the United States Constitution, the New York State Constitution, 42 U.S.C. § 1983, and the laws of the State of New York.  Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN further owed Plaintiff a duty not to subject her to toxic and hazardous materials.

140.   Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN breached their duty to Plaintiff by, among other things, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause, as a means to detain Plaintiff, who was peaceably assembling and was informed by her arresting officer at the time of her arrest that she had not committed any crime, by detaining her for an unnecessary and lengthy period of time; by subjecting her to cruel, inhumane and hazardous conditions; by depriving her of food and medical assistance; and by seizing her property.

141.   Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN knew or should have known that their actions would cause Plaintiff severe emotional distress.

142.   As a direct and proximate result of the breach by Defendants CITY,

BLOOMBERG, KELLY, ESPOSITO AND COLGAN of their duty owed to Plaintiff, Plaintiff

has suffered and continues to suffer severe emotional distress and mental suffering.

143.   The acts of Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND

COLGAN acts were therefore negligent, reckless and oppressive, and went beyond all possible

bounds of decency, thereby justifying an award of compensatory, exemplary and punitive

damages.

### THIRTEENTH CLAIM FOR RELIEF
(Negligence)
(Against Defendants City, Bloomberg, Kelly, Esposito and Colgan)

144.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth

herein.

145.   Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN

confiscated Plaintiff's personal belongings, including her camera and film.  Defendants CITY,

BLOOMBERG, KELLY, ESPOSITO AND COLGAN had a duty to maintain Plaintiff's

belongings in the same condition as Defendants CITY, BLOOMBERG, KELLY, ESPOSITO

AND COLGAN had received those belongings.

146.   Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN

breached that duty by damaging Plaintiff's camera and by losing Plaintiff's film.

147.   But for the breach by Defendants CITY, BLOOMBERG, KELLY,

ESPOSITO AND COLGAN, Plaintiff's camera would not have been damaged and her film

would have been returned to her.

148.  As a result, Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN caused Plaintiff to incur costs for camera repairs and further caused Plaintiff the loss of income for approximately five months.

FOURTEENTH CLAIM FOR RELIEF<br>(Conversion)<br>(Against Defendants City, Bloomberg, Kelly, Esposito and Colgan)

149.  Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

150.  Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN intentionally confiscated Plaintiff's film to the exclusion of Plaintiff's rights to her possession of her film.

151.  Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN have failed to return her film to Plaintiff.

152.  As a result, Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN have deprived Plaintiff of her rightful possession of her film, thereby entitling Plaintiff to an award of damages.

FIFTEENTH CLAIM FOR RELIEF<br>(Replevin)<br>(Against Defendants City, Bloomberg, Kelly, Esposito and Colgan)

153.  Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

154.  Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN have wrongfully and unlawfully detained Plaintiff's roll of film and have failed to return it to Plaintiff.

30

155. As a result, Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN have deprived Plaintiff of her rightful possession of her film and should be ordered to return Plaintiff's film to her.

WHEREFORE, Plaintiff respectfully requests that:

(a) this Court issue a declaratory judgment on the first claim for relief that Defendants' policies and practices of implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause; detaining individuals for unnecessary and lengthy periods of time; unnecessarily fingerprinting individuals; and making false statements in police documents and documents filed with the criminal court concerning the circumstances that serve as the basis for an arrest, violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and award Plaintiff compensatory damages in an amount to be determined;

(b) this Court issue a declaratory judgment on the second claim for relief that Defendants' policies and practices of implementing, enforcing, encouraging and ratifying the use of mass arrest tactics, without probable cause; detaining individuals for unnecessary and lengthy periods of time; unnecessarily fingerprinting individuals; and making false statements in police documents and documents filed with the criminal court concerning the circumstances that serve as the basis for an arrest, violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and award Plaintiff compensatory damages in an amount to be determined;

(c) this Court issue a declaratory judgment against Defendants Bloomberg, Kelly, Hammerman, Doepfner, Sweet, Marin-Jordan, McManus, Esposito, Essig,

31

Dieckmann, Colgan, Galati, Keegan, and Encarnacion and in favor of Plaintiff on the third claim

for relief that Defendants' policies and practices of implementing, enforcing, encouraging and

ratifying the use of mass arrest tactics, without probable cause; detaining individuals for

unnecessary and lengthy periods of time; unnecessarily fingerprinting individuals; and making

false statements in police documents and documents filed with the criminal court concerning the

circumstances that serve as the basis for an arrest, violated Plaintiff's rights under the First,

Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and

award Plaintiff compensatory damages in an amount to be determined in an amount to be

determined;

      (d) this Court issue a declaratory judgment on the fourth claim for relief

that Defendants' policies and practices of implementing, enforcing, encouraging and ratifying the

use of mass arrest tactics, without probable cause; detaining individuals for unnecessary and

lengthy periods of time; unnecessarily fingerprinting individuals; and making false statements in

police documents and documents filed with the criminal court concerning the circumstances that

serve as the basis for an arrest, violated Plaintiff's rights under Article I, Section 8 of the New

York State Constitution and award Plaintiff compensatory damages in an amount to be

determined;

      (e) this Court issue a declaratory judgment on the fifth claim for relief that

Defendants' policies and practices of implementing, enforcing, encouraging and ratifying the use

of mass arrest tactics, without probable cause; detaining individuals for unnecessary and lengthy

periods of time; unnecessarily fingerprinting individuals; and making false statements in police

documents and documents filed with the criminal court concerning the circumstances that serve

as the basis for an arrest, violated Plaintiff's rights under Article I, Section 9 of the New York

State Constitution and award Plaintiff compensatory damages in an amount to be determined;

      (f) this Court issue a declaratory judgment on the sixth claim for relief

that Defendants' policies and practices of implementing, enforcing, encouraging and ratifying the

use of mass arrest tactics, without probable cause; detaining individuals for unnecessary and

lengthy periods of time; unnecessarily fingerprinting individuals; and making false statements in

police documents and documents filed with the criminal court concerning the circumstances that

serve as the basis for an arrest, violated Plaintiff's rights under Article I, Section 12 of the New

York State Constitution and award Plaintiff compensatory damages in an amount to be

determined;

      (g) judgment be entered against Defendants CITY, BLOOMBERG,

KELLY, ESPOSITO AND COLGAN and in favor of Plaintiff on the seventh claim for relief in

an amount to be determined, plus the costs and fees incurred in connection with this action, in an

amount to be determined;

      (h) judgment be entered against Defendants CITY, BLOOMBERG,

KELLY, ESPOSITO AND COLGAN and in favor of Plaintiff on the eighth claim for relief in an

amount to be determined, plus the costs and fees incurred in connection with this action, in an

amount to be determined;

      (i) judgment be entered against Defendants CITY, BLOOMBERG,

KELLY, ESPOSITO AND COLGAN and in favor of Plaintiff on the ninth claim for relief in an

amount to be determined, plus the costs and fees incurred in connection with this action, in an

amount to be determined;

(j) judgment be entered against Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN and in favor of Plaintiff on the tenth claim for relief in an amount to be determined, plus the costs and fees incurred in connection with this action, in an amount to be determined;

(k) judgment be entered against Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN and in favor of Plaintiff on the eleventh claim for relief in an amount to be determined, plus the costs and fees incurred in connection with this action, in an amount to be determined;

(l) judgment be entered against Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN and in favor of Plaintiff on the twelfth claim for relief in an amount to be determined, plus the costs and fees incurred in connection with this action, in an amount to be determined;

(m) judgment be entered against Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN and in favor of Plaintiff on the thirteenth claim for relief in an amount to be determined, plus the costs and fees incurred in connection with this action, in an amount to be determined;

(n) judgment be entered against Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN and in favor of Plaintiff on the fourteenth claim for relief in an amount to be determined, plus the costs and fees incurred in connection with this action, in an amount to be determined;

(o) judgment be entered against Defendants CITY, BLOOMBERG, KELLY, ESPOSITO AND COLGAN and in favor of Plaintiff on the fifteenth claim for relief in

an amount to be determined, plus the costs and fees incurred in connection with this action, in an amount to be determined;

(p)  Defendants be ordered to expunge and/or destroy all fingerprints, in whatever form, taken of Plaintiff, and be further ordered to request that all law enforcement agencies, including without limitation the New York State Division of Criminal Justice Services and the FBI, similarly expunge and/or destroy all fingerprints of Plaintiff taken during the RNC;

(q)  Defendants be ordered to destroy and/or expunge all of Plaintiff's RNC arrest records as well as all records or database entries referencing Plaintiff's arrest during the RNC and to request that all law enforcement agencies that have received information concerning Plaintiff's RNC arrest destroy such information;

(r)  Plaintiff be awarded the costs and disbursements of this action, including attorneys' fees pursuant to 42 U.S.C. § 1988;

(s)  Plaintiff be awarded punitive damages in the amount of $10,000,000; and

(t)  Plaintiff have such other relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

a trial by jury in this action on all matters so triable.

Dated: New York, New York
       January 29, 2008

Respectfully submitted,

David A. Berger (DB-1312)
Cornelius P. McCarthy (CM-3544)
Robert F. Finkelstein (RF-6130)
ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
(212) 571-0550

Attorneys for Plaintiff Noël Grosso

36